UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADISON KUCHTA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION, et al.,<br><br>　　　　Defendants. | Case No. 22-cv-02198-JCS<br><br>**ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 48, 57 |

## I.  INTRODUCTION

Plaintiff Madison Kuchta brings this wrongful death case in connection with the tragic death of her father, who was killed when he attempted to retrieve his dog from the railroad tracks and was hit by an Amtrak train.  Plaintiff has named as defendants: 1) the National Railroad Passenger Corporation ("Amtrak"); 2) the County of Contra Costa ("County" or "Contra Costa County"); 3) Union Pacific Railroad Company ("Union Pacific") and 3) Air Products & Chemicals, Inc. ("Air Products").  Both the County and Air Products have brought motions to dismiss under Rule 12(b)(6), which are presently before the Court.  A hearing on the Motions was held on April 28, 2023.  For the reasons set forth below, the Court GRANTS the Motions.[1]

## II.  LEGAL STANDARDS

To state a claim for relief, a plaintiff must make "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Further, a claim may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *see also Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir.

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

2007). In determining whether a plaintiff fails to state a claim, the court takes "all allegations of material fact in the complaint as true and construe[s] them in the light most favorable to the non-moving party." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions [and] mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and courts "do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (internal quotation marks omitted). The complaint need not contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 678 (citing *Twombly*, 550 U.S. at 570).

### III. BACKGROUND

The operative complaint is the First Amended Complaint ("FAC"), dkt. no. 42. In the FAC, Plaintiff alleges that her father was killed on November 5, 2020, in Contra Costa County, when he was struck by an Amtrak train. FAC ¶ 1. She alleges that at the time, her father was using "an established pathway to access fishing areas." *Id.* ¶ 9. According to Plaintiff, "[t]he pathway includes stairs that cross over a pipeline leading to the train tracks beyond which are established and well-worn pathways to fishing areas." *Id.* Plaintiff alleges that Union Pacific controlled the right of way where the Amtrak train was operating and Air Products controls the refinery pipes that run alongside the right of way. *Id.* ¶ 1. She further alleges, on information and belief, that the County "owned, controlled and was responsible for maintenance of the surrounding areas at issue in this case including, but not limited to, the unincorporated wetlands used for fishing by the decedent and others." *Id.* ¶ 6.

Plaintiff asserts three claims. First, she asserts a claim for negligence against Union Pacific, Amtrak and Air Products based on the allegation that these defendants "negligently owned, maintained, managed, and operated property on and around the established pathway including the train, pipeline, the train tracks, and surrounding vegetation." *Id.* ¶¶ 10-18 ("Claim One"). In this claim, she also alleges that these defendants "failed to guard or warn the general

public and users of the premises against a dangerous condition, use, or activity, including the sudden approach of fast-moving trains." *Id.* ¶ 12.

Second, Plaintiff asserts a claim for a dangerous condition on public property against the County and Air Products. *Id.* ¶¶ 19-27 ("Claim Two"). In this claim, Plaintiff alleges that these defendants "owed Plaintiff, and the public, a duty to maintain, manage and/or control the public property on and around the open and obvious established pathway, train tracks, and the surrounding vegetation, so that it was in a safe condition" and that they "negligently, wrongfully, carelessly, recklessly, and/or unlawfully owned, operated, managed, maintained, and/or controlled the public property on and around the open and obvious established pathway, railroad tracks, and the surrounding vegetation" and thereby created a "dangerous condition." *Id.* ¶¶ 21-22. In particular, Plaintiff alleges, the County and Air Products "failed to provide proper warnings designed to provide pedestrians using the established pathway with sufficient opportunity to avoid being placed in a position of danger with respect to approaching Amtrak trains." *Id.* ¶ 23.

Third, Plaintiff asserts a claim for wrongful death under California Code of Civil Procedure section 377.60 against all defendants. FAC ¶¶ 28-33 ("Claim Three").

## IV. COUNTY MOTION

### A. Contentions of the Parties

In the County's motion to dismiss, dkt. no. 48 ("County Motion"), the County argues that Plaintiff's allegations are too vague and conclusory to satisfy the pleading requirements of Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure as to the two claims asserted against it, the claim for creating a dangerous condition on public property (Claim Two) and the derivative wrongful death claim (Claim Three). County Motion at 3-4. In particular, it argues that Plaintiff has failed to specifically identify the public property that the County allegedly owned or controlled or the nature of the dangerous condition it created and therefore, has also failed to put the County on notice of the duty owed to Plaintiff or how the condition led to Plaintiff getting hit by a train. *Id.* at 4-6.

As to identifying the property, the County offers as an example, Plaintiff's "contradictory and conclusory" allegations that "the County and Air Products . . . both owed 'a duty to maintain,

1 manage, and/or control' certain 'public property' that is described only as being 'on and around
2 the open and obvious established pathway, train tracks, and surrounding vegetation.'" *Id.* at 4
3 (quoting FAC ¶ 21). According to the County, "what specific property is at issue, and who
4 maintained, or managed, or owned that specific property remains uncertain." *Id.*

As to the nature of the dangerous condition, the County argues that while the "complaint contends that the 'pathway' – which apparently included stairs over a third-party's pipeline leading to the tracks (FAC ¶9) – or 'vegetation' constituted a dangerous condition, the FAC not only fails to plead the specific entity responsible for that condition, but it also fails to show how whatever condition led to plaintiff getting hit by a train." *Id.* at 4. The County contends the only specificity as to the theory of Plaintiff's claims against it is in the government tort claim she filed with the County on May 3, 2021, of which the Court is asked to take judicial notice.[2]

The government tort claim, attached as Exhibit A to the County's Request for Judicial Notice ("RJN"), describes the dangerous condition as follows:

> The County owned and negligently maintained a section of the adjoining land adjacent to the railroad tracks in an area frequently visited by fisherman and other sports enthusiasts. The County's failure to post a warning sign or any other sign or disclosure to warn of any danger, or to fence or barricade this property, led to frequent foot traffic to the area surrounded by estuaries and bodies of water (a known attractive nuisance). The County failed to properly mark or warn of the railroad crossing or provide warnings to fisherman who frequently used the adjacent land next to the railroad tracks.
>
> The County did provide such warnings on adjacent property similarly situated directly across the roadway from the location of the incident. The signage reads "Area Closed: No Trespassing. No entry until made accessible and safe for public use." The County owned and maintained a section of the adjacent roadway and the property in an unreasonably unsafe condition and in such an unsafe manner as to constitute a dangerous condition on public property. Thus, the County knew or should have known of the unsafe conditions where the incident occurred and that it was foreseeable that the dangerous condition might lead to injury or death. Brian Kutcha and his beloved dog were struck and killed by an Amtrak passenger train while he was in proximity to the unsafe and unmarked railroad tracks. Brian Kuchta's death was proximately caused by the dangerous condition

---

[2] The County's request, which Plaintiff has not opposed, is GRANTED on the basis that the government tort claim is a public record and therefore suitable for judicial notice under Rule 201(b) of the Federal Rules of Evidence. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (taking notice of matters of public record outside the pleadings).

maintained by the County.

RJN, Ex. A. But the County argues that even the failure to warn theory fails as a matter of law because there is no duty to warn with respect to train tracks, which "are, themselves, warning of a dangerous condition, *i.e.*, the danger posed by trains using the tracks." *Id.* at 4 (citing *Christoff v. Union Pacific Railroad Co.*,134 Cal. App. 4th 118, 126 (2005); *Carter v. Amtrak*, 63 F. Supp. 3d 1118, 1151 (N.D. Cal. 2014)).

Finally, the County argues that Plaintiff's claims fail because no dangerous condition is alleged to have existed on County-owned property, citing *Hedayatzadeh v. City of Del Mar*, 44 Cal.App.5th 555, 565 (2020), and therefore, there was no duty to erect a barrier. *Id.* at 5. According to the County, the Court in *Hedayatzadeh* recognized that public property "'may be considered dangerous if a condition on the adjacent property exposes those using the public property to a substantial risk of injury[ ]'" but "found that 'case law does not extend liability to circumstances in which the public entity has not engaged in any affirmative act regarding the use of its property (such as locating a public facility in a dangerous place or deciding to create an opening in a fence to entice children to cross a dangerous intersection), but has merely failed to erect a barrier to prevent users of the public property from leaving the public property and willfully accessing a hazard on adjacent property.'" *Id.* (quoting *Hedayatzadeh*, 44 Cal.App.5th at 563-565). The County argues that like the defendant in *Hedayatzadeh*, it did nothing to "entice[ ] or encourage[ ] the decedent to access the alleged dangerous condition" and therefore cannot be liable to Plaintiff for creating a dangerous condition because it did not erect a barrier or take other measures to protect Plaintiff's father from any dangerous condition on adjacent property. *Id.* at 6.

In her Opposition, Plaintiff argues that she has sufficiently alleged the existence of a dangerous condition on public property by alleging that there was "an established pathway, including stairs that cross over a pipeline and train tracks, beyond which is an established and well-worn pathway to fishing areas." Opposition at 3 (citing FAC ¶ 9). Plaintiff further asserts that the County owed a duty of due care to Plaintiff, pointing to this Court's decision in *Carter v. Nat'l R.R. Passenger Corp.*, 63 F. Supp. 3d 1118 (N.D. Cal. 2014). According to Plaintiff, that case stands for the proposition that "the foreseeability of danger presented by established

5

1    pathways over train tracks created a duty to take reasonable measures, which may include
2    installing a fence or taking some preventative measures to prevent harm to individuals who
3    regularly walk the trails in the area." *Id.*  (citing 63 F. Supp. 3d at 1148). Plaintiff further asserts
4    that the facts here suggest that that duty was violated, as Plaintiff's father "was led to [the train]
5    tracks by the absence of any fence or signs and by an open and obvious pathway with a wooden
6    foot bridge that allowed him to climb over the refinery pipes, across the train tracks, and onto the
7    pathway on the other side that led to fishing areas" and "[e]ither the County never inspected the
8    area where there is a visible trail leading over to the footbridge, train tracks, and to the fishing
9    areas, or they didn't care." *Id.* at 5.

10    Plaintiff also rejects the County's assertion that Plaintiff has not alleged specific facts
11    showing that the dangerous condition on its property led to Brian Kuchta's death. *Id*. at 5. In
12    particular, she argues that the allegation in the government tort form that "[t]he County and its
13    servants, employees failed to provide any barrier, fence, barricade, licensee, or invitees to use the
14    property for fishing and other safe outdoor activities" and "failed to provide any warnings of
15    active train passage in the area that is foreseeably visited by fisherman like (sic) Kuchta and
16    people from surrounding neighborhoods" is sufficient to establish a "nexus" between the
17    dangerous condition and Plaintiff's harm.  *Id.* Plaintiff argues that if the Court finds her complaint
18    to be insufficient with respect to her claims against the County, she should be given leave to
19    amend to allege specific facts supporting liability. *Id.* at 6-7.

20    In its Reply brief, the County argues that Plaintiff misconstrues its arguments, simply
21    "parrot[ing] the elements of a dangerous condition claim[ ] [and] repeat[ing] the conclusory
22    allegations from the complaint."  Reply at 2.  The County states that it "does not deny that it
23    could theoretically be liable for injuries caused by a dangerous condition on its property" but
24    instead argues "the allegations in the FAC fail to show a dangerous condition existed on County
25    property as a matter of law, which is a question for the Court." *Id.* (citing *Avey v. County of Santa*
26    *Clara*, 257 Cal. App. 2d 708, 712 (1968)).

27    The County emphasizes that it does not own the tracks where the incident occurred; as
28    Plaintiff alleges in the complaint, Union Pacific owns the right of way where the Amtrak train was

operating. *Id.* (citing FAC ¶ 1). Thus, it contends, any claim must be "based on a theory of adjacent property owner liability[,]" as Plaintiff appeared to recognize in her government tort claim. *Id.* Yet Plaintiff has not alleged specific facts stating a plausible claim under the case law that governs adjacent property liability, the County asserts. *Id.* at 3-4. The County points out that Plaintiff did not address the *Hedayatzadeh* case at all, even though it argued in the motion that that case was directly on point. *Id.* at 4.

The County further asserts that Plaintiff's reliance on the *Carter* case is misplaced because she cites a decision in that case involving a claim "against the owners of the train tracks and the railroad right of way – not a claim against the owner of adjacent public property, as is the case at hand." *Id.* at 4-5 (citing *Carter v. AMTRAK*, 63 F. Supp. 3d 1118, 1121 (N.D. Cal. 2014)). In contrast, the County asserts, the court's earlier decision in *Carter,* in which it found that claims against adjacent public property owners were insufficiently pled, confirm that Plaintiff's claim against the County fails as a matter of law. *Id.* at 5 (citing *Carter v. Amtrak, No*. C-13-00809 JCS, 2013 U.S. Dist. LEXIS 91529, at *8 (N.D. Cal. June 28, 2013)).

**B.    Discussion**

### 1. Legal Standards Governing Dangerous Conditions on Public Property and Adjacent Property

California Government Code section 835 sets out the exclusive conditions under which a public entity is liable for injuries caused by a dangerous condition of public property. *Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1131–1132 (2002). Section 835 provides:

> Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Cal. Gov't Code § 835.

To establish liability based on a dangerous condition of public property under Section 835, a plaintiff must show that "(1) the property was in a dangerous condition at the time of the injury; (2) the injury was proximately caused by the dangerous condition; (3) the condition created a reasonably foreseeable risk of the kind of injury suffered; and either the condition was the result of the wrongful act or omission of the entity's employee acting within the scope of his employment or the entity had actual or constructive notice of the condition a sufficient time prior to the injury to have corrected the dangerous condition." *Mamola v. State of California ex rel. Dep't of Transportation*, 94 Cal. App. 3d 781, 788 (1979).

For the purposes of Section 835, "'[d]angerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." Cal. Gov't Code § 830(a). The Law Revision Commission Comments to Section 830 note that "'Adjacent property' as used in the definition of 'dangerous condition' refers to the area that is exposed to the risk created by a dangerous condition of the public property." The Comments further explain:

> Under the definition as it is used in subsequent sections, a public entity cannot be held liable for dangerous conditions of "adjacent property." A public entity may be liable only for dangerous conditions of its own property. But its own property may be considered dangerous if it creates a substantial risk of injury to adjacent property or to persons on adjacent property; and its own property may be considered dangerous if a condition on the adjacent property exposes those using the public property to a substantial risk of injury.

Cal. Law Revision Com. foll. § 830.

"The existence of a dangerous condition ordinarily is a question of fact, but the issue may be resolved as a matter of law if reasonable minds can come to only one conclusion." *Zelig v. Cnty. of Los Angeles*, 27 Cal. 4th at 1133.[3]

---

[3] Although a heightened pleading standard applies to Section 835 claims against a public entity when asserted in state court, that heightened pleading standard does not apply to government tort claims asserted in federal court. *Ayala v. City of S. San Francisco*, 2006 WL 2482292, at *4 (N.D. Cal. Aug. 28, 2006). Therefore, Plaintiff here is required only to satisfy the standards under Rule

8

**2. Discussion**

The crux of the County's argument is that "the allegations in the FAC fail to show a dangerous condition existed on County property as a matter of law, which is a question for the Court." Reply at 2. The Court concludes that Plaintiff's allegations are not sufficient to meet the notice pleading requirements under Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure. In reaching this conclusion, the Court considers the allegations in the FAC and in Plaintiff's government claim, which the parties have stipulated may be deemed to be part of Plaintiff's complaint.

The County relies heavily on *Hedayatzadeh v. City of Del Mar*, 44 Cal. App. 5th 555 (2020) to argue that Plaintiff's allegations are not sufficient to establish the existence of a dangerous condition on the County's property. The Court therefore begins its analysis by examining the facts and holding of that case.[4]

In *Hedayatzadeh*, the plaintiff's 19-year old son, Javad, was struck by a train on property owned by the transit district ("NCTD"), which was adjacent to a bluff owned by the City of Del Mar ("City"). 44 Cal. App. 5th at 557. The bluff was at the end of a city street ("13th Street") and there was a guardrail on City property that "prevent[ed] automobiles from continuing past the end of 13th Street to reach NCTD's right-of-way, but [allowed] pedestrians . . . to walk around the guardrail to access NCTD's right-of-way and the train tracks." *Id*. at 558. "[A] sloped dirt embankment [began] after the end of 13th Street and [led] down to the area where the train tracks [were] located." *Id*. The railroad right-of-way, "which consist[ed] of the train tracks and an area approximately 50 feet to both the west and east of the tracks, [was] owned and controlled by NCTD, not by the City." *Id.* at 563.

On the night when the incident occurred, Javad and his friends "walked around the guardrail at the end of 13th Street, down an unimproved dirt embankment, and crossed the train tracks[,]" then "walked northbound on the west side of the tracks to a spot where they sat and smoked marijuana." *Id.* According to the court, they "knew they were trespassing on NCTD

---

8(a) and *Iqbal* and *Twombly*, discussed above.
[4] Unfortunately, Plaintiff did not address this case in her Opposition brief.

1 property" as "NCTD has installed signs stating 'No Trespassing,' 'Danger' and 'Railroad
2 Property.'" *Id.* Javad was killed when he neared the train tracks to take a selfie next to an
3 approaching freight train. *Id.*

4     The plaintiff in *Hedayatzadeh* brought a claim against the City based on the dangerous
5 condition of its property due to the adjacent train tracks and the City brought a motion for
6 summary judgment, arguing that its property was not in a dangerous condition, as a matter of law,
7 and that the alleged dangerous condition was not the proximate cause of Javad's death. *Id.* at 559-
8 560. The court agreed. The *Hedayatzadeh* court began by recognizing that where the source of
9 danger is located on adjacent property, a dangerous condition may exist on public property in one
10 of two general scenarios. First, the court noted, California courts have held that where an accident
11 is the result of a hazardous condition on property that is adjacent to a public highway or walkway,
12 the public entity is liable if the condition "is so connected with or in such proximity to the traveled
13 portion of the highway as to render it unsafe to those traveling thereon." *Id.* at 564 (internal
14 quotations and citations omitted). Second, "public entities have been held liable for undertaking
15 an affirmative act, such as deciding to locate a public facility in a certain place or providing a
16 particular means of access to an adjacent hazard, that put users of the public property into danger
17 from adjacent property." *Id.* The *Hedayatzadeh* court found, however, that the facts in that case
18 did not fall into either category.

19     As to the first category, the court cited as examples *Bakity v. County of Riverside* 12
20 Cal.App.3d 24, 30 (1970) ("trees on adjacent property created a dangerous condition of public
21 property because they obstructed motorists' view of approaching vehicles on the county
22 highway"); *Rose v. Orange County,* 94 Cal.App.2d 688, 691 (1949) ("a county could be liable for
23 a dangerous unprotected ditch along a state road that intersected a state road when it did not install
24 a stop sign or warn of the ditch for drivers proceeding directly from the county road"); *Marsh v.*
25 *City of Sacramento,* 127 Cal.App.2d 721, 724 (1954) ("demolition of a private building adjacent
26 to a city sidewalk left an unprotected eight-foot dropoff from the sidewalk"); and *Jordan v. City of*
27 *Long Beach,* 17 Cal.App.3d 87 (1971) ("a hole and protruding pipe located directly adjacent to
28 city pavement posed a dangerous condition of public property to pedestrians using the city

pavement"). *Id.* at 564. Although the court in *Hedayatzadeh* was not explicit in this respect, it implicitly found that these cases were not on point, apparently because the hazard presented by the condition on the adjacent property in that case (*ie.*, the railroad track) was at least 50 feet from the City's property, in contrast to the examples the court cited, and thus the hazard was not "in such proximity to the traveled portion of the highway as to render it unsafe to those traveling thereon."

As to the second category, the court considered three cases in which "public entities have been held liable for undertaking an affirmative act, such as deciding to locate a public facility in a certain place or providing a particular means of access to an adjacent hazard, that put users of the public property into danger from adjacent property[:]" *Bonanno v. Central Contra Costa Transit Authority*, 30 Cal.4th 139, 147, 148 (2003); *Branzel v. City of Concord,* 247 Cal.App.2d 68, 75(1966); and *Joyce v. Simi Valley Unified School Dist.*, 110 Cal.App.4th 292 (2003). *Id.* at 564-5654.

In *Bonanno*, the court said, "a transit authority was liable for a dangerous condition of public property because it chose to locate a bus stop at a location that encouraged bus patrons to cross a county street at a dangerous location to reach the bus stop, although a less dangerous location was available." *Id.* at 564. In *Branzel*, "a city lot designated for flying model airplanes constituted a dangerous condition of public property because the city chose to locate the flying field adjacent to electric power lines that posed a risk of electrocution if a model airplane got out of control and contacted the power lines while a person was holding the long wire line attached to the model airplane." *Id.* And in *Joyce*, the court explained, "a junior high school principal ordered a hole cut in a fence next to a crosswalk on a city street to encourage students to cross at that intersection, even though the intersection was dangerous, especially after the city increased the speed limit." *Id.* According to the court in *Hedayatzadeh*, "liability for a dangerous condition of public property was warranted because the school district 'was aware of the dangerous intersection but insisted on keeping the gate open after City increased the speed limit' . . . and 'a reasonable trier of fact could find that the open gate was a dangerous condition that could have been remedied by simply closing the fence opening and directing students to cross at the signal.'" *Id.* (quoting *Joyce,* 110 Cal. App. 4th at 299-300).

11

The court in *Hedayatzadeh* found that the facts of that case did not reflect the same kind of purposeful action on the part of the public entities as was at issue in *Bonanno*, *Branzel* and *Joyce* but instead, were similar to the facts in two cases in which California courts found no public entity liability, *Avey v. Santa Clara County,* 257 Cal. App. 2d 708 (1968) and *Durham v. City of Los Angeles*, 91 Cal. App .3d 567 (1979). *Id.* at 566-567. In *Avey,* the court said, "[c]hildren waiting at a bus stop on state-owned El Camino Real would sometimes run across that street and traverse a state-owned traffic island, and then cross [City owned] Fremont Avenue to buy treats at the grocery store" then "reverse the trip" to return to the bus stop. *Id.* at 566 (citing *Avey*, 257 Cal. App. 2d at 710). "After children were twice killed by automobiles on El Camino Real when returning to the bus stop from the grocery store, the plaintiffs alleged that the city was liable for a dangerous condition of public property because it did not erect a barricade or take other measures to prevent children from crossing from Fremont Street to the county-owned traffic island and El Camino Real." *Id.* (citing *Avey*, 257 Cal. App. 2d at pp. 710-712). The court in *Avey* "rejected plaintiffs' theory of liability as a matter of law, holding that 'such a barricade was not required under section 835 in the exercise of ordinary care by defendants to maintain its street in a reasonably safe condition.'" *Id.* (citing *Avey*, 257 Cal. App. 2d at 713).

According to the *Hedayatzadeh* court, in *Durham*, "a boy was either trying to hop a train or was throwing rocks at a train when he was struck by the train and injured." *Id.* (citing *Durham*, 91 Cal. App. 3d at 570). "The city maintained a crosswalk near the accident, which ended at the easement owned by the Southern Pacific Railway, where the railroad tracks were located" and a "lawsuit against the city alleged that the crosswalk constituted a dangerous condition of public property because the city 'should have given appropriate warning or erected and maintained suitable barriers since it had knowledge of the existence of the dangerous condition (the train) adjacent to its property.'" *Id*. (quoting *Durham*, 91 Cal. App. at 576). The *Durham* court "rejected liability as a matter of law stating, 'The City's property in the case at bench was in no way defective and could not be considered dangerous except in relation to the railroad tracks. As in *Avey* . . . we find no duty on the political entity to erect some sort of barricade in order to maintain its street in a reasonably safe condition.'" *Id.* (quoting *Durham*, 91 Cal. App. at 577).

12

Finally, the *Hedayatzadeh* court distinguished *Holmes v. City of Oakland,* 260 Cal.App.2d 378, 381 (1968), a case upon which the plaintiff relied. *Id.* at 568. Like *Durham*, *Holmes* "concerned the issue of whether a city could be liable due to the presence of a railroad track adjacent to a public street[,]" but in *Holmes* the court found that the city could be liable. *Id.* According to the court in *Hedayatzadeh*, the reason the court reached a different result in *Holmes* than the court in *Durham* was that "children were involved and because the hazardous train tracks were directly adjacent to the city street." *Id*. In particular, the court explained, "[i]n *Holmes* an elementary school was near a public street on which railroad tracks were located" and "[m]any students crossed the tracks on their way home from school and were attracted to playing on or around the trains." *Id.* (citing *Holmes*, 260 Cal. App. 2d at 381). The court went on to distinguish *Holmes* from the facts in *Hedayatzadeh* for similar reasons, stating: "NCTD's train tracks are not directly adjacent to a City street and are not in the normal route that children take home from school. Instead, in this case, to incur any kind of injury on the train tracks, pedestrians (whom we necessarily assume to be reasonable adults) must decide to go around a guardrail, down an embankment and over a wide area of NCTD property to reach the train tracks." *Id.*

Here, the allegations in the FAC, even taking into account the facts alleged in Plaintiff's government claim, are scant. It appears to be undisputed that Union Pacific, and not the County, owns the railroad tracks where the accident occurred, *see* FAC ¶ 8. There are, however, no allegations establishing where the County's property began or how far it was from the railroad tracks. In contrast to *Holmes*, for example, there are no allegations that the train track was directly adjacent to County property (in *Holmes*, the railroad track actually ran *on* the City street). Consequently, the allegations do not give rise to a plausible inference that the County's property "is so connected with or in such proximity to" the train tracks that the County's property is rendered unsafe. *See Hedayatzadeh*, 44 Cal. App. 5th at 564.

Nor do the cases discussed above suggest that a well-worn path connecting the public property to adjacent property with a hazardous condition (*ie.*, a train track) is enough to render to the public property dangerous for the purposes of establishing liability. This conclusion finds particular support in *Durham,* which in some ways is more closely on point than *Hedayatzadeh* to

13

the facts of this case. There, the plaintiff sought to establish liability on the part of the City based on the existence of a crosswalk on city property that ended at the railroad easement, had "no present purpose or use," and which led "to and across the railroad track." 91 Cal. 3d at 576; *see also Carter v. Nat'l R.R. Passenger Corp.*, No. C-13-00809 JCS, 2013 WL 3300495, at *8 (N.D. Cal. June 28, 2013) (holding that "the mere availability of access to tracks does not by itself establish a dangerous condition of public property" and finding that general allegations that there were dirt paths on public property adjacent to train tracks were insufficient to state a claim for public entity liability based on a dangerous condition).

More generally, the Court finds that Plaintiff has not alleged facts, or articulated a theory, from which a reasonable person could conclude that the railroad tracks in this case presented a foreseeable risk to users exercising reasonable care. Plaintiff has alleged generally in the FAC that the County should be held liable based on a failure to warn, but she alleges no facts to support the existence of such a duty and she has offered no response to the County's argument that there is no duty to warn as to obvious dangers such as a train track. *See Christoff v. Union Pac. R.R. Co.*, 134 Cal. App. 4th 118, 126 (2005) (citations omitted). Nor has Plaintiff alleged any facts to support the allegation that the County had an obligation to erect barriers or signs to prevent entry onto adjacent property – theories that appears to fail under *Avey*, *Durham* and *Hedayatzadeh*. The Court also notes that Plaintiff failed to address any of these cases in her Opposition brief.

Further, Plaintiff's reliance on this Court's summary judgment order in *Carter v. Amtrak*, 63 F. Supp. 3d 1118 (N.D. Cal. 2014), to argue that the County had a duty to erect barriers is misplaced. That order addressed the duties of Union Pacific, the owner of the railroad track and right-of-way, in connection with the existence of well-worn paths leading to the railroad tracks on its *own* property. It did not address the duties of an adjacent property owner or the standards that govern public entity liability in that context. Similarly, Plaintiff's passing reference to *Swaner v. City of Santa Monica*, 150 Cal. App. 3d 789, 808 (1984), *see* Opposition at 6, does not help Plaintiff as that case also did not involve a hazard on adjacent property; rather, that case addressed whether the city had a duty to erect a barrier between a parking lot and the adjacent beach where both the parking lot and the beach were owned by the city.

14

1    The only remaining question is whether Plaintiff should be given leave to amend to allege
2    specific facts that raise a plausible inference that there was a dangerous condition on its property
3    for which it might be held liable.  In her brief, Plaintiff asks for leave to amend based on the fact
4    that discovery is ongoing, but she does not point to any specific facts she would add to the
5    complaint that would remedy the deficiencies discussed above.  Nonetheless, the Court will give
6    Plaintiff an opportunity to amend her claims against the County as it cannot say for sure that
7    amendment would be futile.

## V. AIR PRODUCTS MOTION

### A. Contentions of the Parties

10   In its motion to dismiss, dkt. no. 57 ("Air Products Motion"), Air Products contends the
11   FAC fails to state a claim against it for several reasons.  First, it asserts that all of Plaintiff's claims
12   against it are time-barred because Plaintiff waited more than two years after the incident at issue to
13   sue Air Products and the claims against Air Products do not relate back to the original Complaint.
14   Second, Air Products argues that Claim One (Negligence) fails as a matter of law as to Air
15   Products because Plaintiff has not alleged facts to establish a dangerous condition on property
16   owned by Air Products that caused the decedent's death, much less any negligence by Air
17   Products.  Third, Claim Two (dangerous condition on public property) fails as to Air Products, it
18   asserts, because Plaintiff has not alleged that Air Products is a public entity.  Finally, Air Products
19   asserts that Claim Three (wrongful death) fails as a matter of law because Plaintiff has not alleged
20   facts to establish any tortious conduct by Air Products.

21   In her Opposition, Plaintiff does not dispute that Claim Two fails as to Air Products
22   because it is not a public entity and at oral argument, she stipulated to the dismissal of Claim Two
23   as to Air Products.  As to the timeliness of Plaintiff's remaining claims against Air Products,
24   Plaintiff does not dispute that California's two-year statute of limitations (Cal. Code Civ. Proc. §
25   335.1) applies to her claims against Air Products, or that that period expired on November 5, 2022
26   (two years after Plaintiff's father was killed).  Nor does she assert that she included any specific
27   allegations relating to Air Products in her original complaint, even as a Doe defendant.  Instead,
28   she states that "at the time the complaint was filed, Plaintiff was informed and believed that all

15

property involved in this matter was owned by either the County of Contra Costa or Amtrak. Since then, Plaintiff has hired experts and discovered that Air Products and Union Pacific Railroad Company also own a stake in this litigation." Opposition at 5. According to Plaintiff, her only mistake was in failing to add Air Products as a Doe defendant when she amended her complaint and she should be permitted to amend the complaint to correct that error. *Id.* at 5-6.

As to Air Products' assertion that Plaintiff fails to allege any dangerous condition on its property to support its negligence and wrongful death claims, Plaintiff states, "How a wooden foot bridge over refinery pipes and onto train tracks is a dangerous condition seems obvious: pedestrians can use the pathway to access train tracks which increases the likelihood of someone getting hit by a train." *Id.* at 4. Plaintiff does not cite any authority in support of that assertion.

**B.     Discussion**

    **1.     Timeliness of Claims Against Air Products**

Both the negligence and wrongful death claims asserted against Air Products are governed by California's two-year statute of limitations. *See* Cal. Civ. Proc. Code § 335.1. As Plaintiff's father was killed on November 5, 2020, FAC ¶ 1, that period expired on November 5, 2022. Air Products was not added as a defendant, however, until January 23, 2023, when Plaintiff filed the FAC.[5] "Under California law, if a defendant is added to an amended complaint as a new defendant, and not as a Doe defendant, the amendment does not relate back to the time of the original complaint." *Anderson v. Allstate Ins. Co.*, 630 F.2d 677, 683 (9th Cir. 1980). Plaintiff concedes that she did not properly add Air Products as a Doe defendant, but requests "the opportunity to amend the complaint and properly doe in the defendants." Opposition at 6. Thus, the only question is whether Plaintiff should be permitted to amend to name Air Products as a Doe defendant.

Air Products asserts that Plaintiff cannot name it as Doe defendant because, although Plaintiff named Doe defendants in her original complaint, that complaint does not contain

---

[5] Although the existing parties at the time – Plaintiff, the County and Amtrak – stipulated that Plaintiff should be permitted to file an amended complaint adding Union Pacific and Air Products to the case, dkt. no. 40, that stipulation did not address the timeliness of Plaintiff's new claims or purport to waive any statute of limitations.

16

"sufficient charging allegations" to permit her to name Air Products as one of those Does. Reply at 5; *see also* Air Products Motion at 6 ("The Complaint was completely silent as to the existence or salience of any such pipeline or pathway, and thus none of the Doe allegations made in that pleading could apply to such allegations."). In its Reply brief, Air Products points to the following passage in *Winding Creek v. McGlashan*, in support of this argument:

> Even if a plaintiff meets the other requirements of Doe pleading, an amended pleading will not relate back unless the original complaint set forth or attempted to set forth some cause of action against fictitiously named defendants. (*Marasco v. Wadsworth* (1978) 21 Cal.3d 82, 87, 145 Cal.Rptr. 843, 578 P.2d 90; *Austin v. Massachusetts Bonding & Insurance Co.*, *supra*, 56 Cal.2d at p. 599, 15 Cal.Rptr. 817, 364 P.2d 681; *Breceda v. Gamsby* (1968) 267 Cal.App.2d 167, 173, 72 Cal.Rptr. 832; *Williams v. Goodman* (1963) 214 Cal.App.2d 856, 861, 29 Cal.Rptr. 877.) "It is not enough, of course, simply to name 'Doe' defendants. Rather, the complaint must allege that they were responsible in some way for the acts complained of." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial 1 (The Rutter Group 1995) ¶ 6:85, p. 6–17, citing *Williams v. Goodman*, *supra*.)

*Id.* (quoting 44 Cal. App. 4th 933, 941 (1996)). Air Products goes on to argue that Plaintiff cannot name it as a Doe defendant because "the Complaint focused entirely on the premises where Mr. Kuchta was injured—the train tracks" and "[t]he pipeline pathway theory is an entirely new concept expressed for the first time in the Amended Complaint." *Id.*

The Court finds that Air Products reads California law on this issue too narrowly. Air Products suggests that it could only be added as a Doe defendant if "Plaintiff alleged a claim for relief implicating the adjacent pipeline property, but without knowledge of the property owner." Reply at 5. But the California Supreme Court has adopted a more liberal approach, holding that "an amendment substituting a named individual previously sued by a fictitious name relates back to the filing of the original complaint where the recovery is for the same accident and injury, regardless of whether it sets out a different legal theory or states a different cause of action." *Marasco v. Wadsworth*, 21 Cal. 3d 82, 85–88 (1978) (citing *Smeltzley v. Nicholson Mfg. Co.*, 18 Cal.3d 932 (1977)).

In *Marasco*, for example, "the original complaint did not single out and specifically charge the driver of the vehicle in which the decedent was riding with negligence" and the Doe defendant

was alleged to be the driver of the *other* car involved in the accident, but the court nonetheless found that the driver of the vehicle in which the decedent was riding could be substituted for the Doe defendant, holding "[t]he substitution and change in the statement of theory was permissible." *Id.* The court cited to other decisions by California courts on this question to support its conclusion:

> We held in *Austin* that suing Massachusetts Bonding by its fictitious name in the original complaint would not be held to defeat a substitution as well as a change of theory which would have been acceptable if defendant had been sued originally by its true name (*Austin*, *supra*, 56 Cal.2d p. 602). Like the plaintiff in *Barnes v. Wilson*, *supra*, 40 Cal.App.3d 199, plaintiff here is seeking to hold Wadsworth legally responsible for the same accident and injuries referred to in the original complaint. Moreover, similar to the amendment in *Barnes, supra*, the amendment here, changing the basis of the liability of Doe XI from that of another car's driver to decedent's driver, is no more drastic than the change of theory from principal to surety reflected by the amendment in *Austin, supra*, or the amendment in *Garrett v. Crown Coach Corp*. (1968) 259 Cal.App.2d 647, 651 [66 Cal.Rptr. 590], changing the basis of liability from that of a vehicle operator to that of a vehicle manufacturer. ( *Smeltzley v. Nicholson Mfg. Co*., supra, 18 Cal.3d 932, 938-939; *Barnes v. Wilson*, *supra*, 40 Cal.App.3d 199, 205; *Grudt v. City of Los Angeles* (1970) 2 Cal.3d 575, 584-585 [86 Cal.Rptr. 465, 468 P.2d 825].)

21 Cal. 3d at 87.

Here, the original complaint alleged basic facts about the accident that led to the decedent's death. Further, the original complaint named Does 1-100 and alleged in the negligence claim that the County "failed to place warning signs in the area where plaintiff was injured, and in face [sic], built ladders so this dangerous area was accessible to the entire public." Dkt. No. 1 (Notice of Removal, Ex. A (Complaint)). As Plaintiff's claims against Air Products are based on the same accident that is the basis of Plaintiff's claims in the original complaint and the theory on which they are based – that Air Products created a dangerous condition on its property by permitting a bridge over its pipes to be built that allowed the public to access the train tracks -- is relatively similar to the original theory supporting her negligence claim, the Court concludes that the charges in the original complaint are sufficient to permit Air Products to be added as a Doe defendant. Therefore, Plaintiff will be permitted to amend her complaint to substitute Air Products into the case for a Doe defendant.

**2. Whether Plaintiff Has Adequately Alleged Negligence by Air Product's**

Plaintiff's claims against Air Products are based on premises liability, which is a form of negligence under California law. *Brooks v. Eugene Burger Management Corp.*, 215 Cal.App.3d 1611, 1619 (1989). The adequacy of Plaintiff's claims for negligence and wrongful death against Air Products turns on whether she has sufficiently pled the elements of negligence under California law. To prevail on a claim for negligence, a plaintiff must establish that "defendant had a duty to plaintiff, that the duty was breached by negligent conduct, and that the breach was the cause of damages to the plaintiff." *Id.*

Under California law, the duty owed by a landowner is governed by the factors set forth in *Rowland v. Christian*, 69 Cal.2d 108 (1968). In that case, the California Supreme Court rejected the common law emphasis on whether the plaintiff had permission to come onto the landowner's property in determining the scope of the landowner's duty. Instead, it held that premises liability is governed by the policy embodied in Cal. Civ. Code section 1714, which provides that "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property. . . ." *Id.* at 119. Departures from the "fundamental principal" "that a person is liable for injuries caused by his failure to exercise reasonable care in the circumstances" "involves the balancing of a number of considerations":

> the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.

*Id.* at 112–113. The existence of duty is a question of law for the court. *Ballard v. Uribe*, 41 Cal. 3d 564, 572, fn. 6 (1986).

In *Carter*, this court found that where the decedent was using a worn path that led from a parking lot across the train tracks to a nature area on the other side, and there was evidence that the path was frequently used, the owner of the railroad right-of-way (in that case, Union Pacific, as in

19

this case) might owe a duty to install gates or other barriers to reduce access to the train tracks. 63 F. Supp. 3d at 1151. The holding in *Carter*, however, did not extend to owners of property adjacent to the train track where the property owner did not control the train tracks or the right-of-way where the tracks were located. Nor has Plaintiff cited any authority to support her assertion that merely by allowing a path or bridge to exist that facilitates access to land with a railroad track running on it, the adjacent property owner creates a dangerous condition. Further, given the vague allegations as to the location of the pipeline and its proximity to the train tracks, the allegations in the FAC do not give rise to a plausible inference that the bridge over the pipeline was owned by Air Products or causally related to the accident that resulted in Kuchta's death.[6]

Therefore, the Court finds that Plaintiff has not adequately alleged a claim for negligence against Air Products. Because Plaintiff's wrongful death claim is based on Air Product's alleged negligence, that claim fails on the pleadings as well. Plaintiff will be permitted to amend to attempt to cure the shortcomings discussed above.

## VI. CONCLUSION

For the reasons stated above, the Court GRANTS the Motions. As to the County, the Court dismisses all of Plaintiff's claims with leave to amend. As to Air Products, the Court dismisses Claim Two with prejudice and Claims One and Three with leave to amend. Plaintiff's amended complaint shall be filed by **May 26, 2023.**

**IT IS SO ORDERED.**

Dated: May 1, 2023

JOSEPH C. SPERO
United States Magistrate Judge

---

[6] Plaintiff attempts to address this shortcoming by offering a declaration with a map showing the pipeline and possibly identifying Air Products as the owner, a picture of the bridge, and a Google earth image that also shows the bridge. Fetto Decl., Exs. 1-3. This extrinsic evidence may not be considered in deciding a Rule 12(b)(6) motion.

20